People v Rodriguez (2025 NY Slip Op 50963(U))

[*1]

People v Rodriguez

2025 NY Slip Op 50963(U)

Decided on June 11, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 11, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Israel Rodriguez, Defendant.

Docket No. CR-024232-24BX

For the Defendant
The Bronx Defenders
(by: Alice Thompson, Esq.)
For the People
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Oscar Carias)

Deidra R. Moore, J.

On September 30, 2024, Israel Rodriguez (hereinafter referred to as "the Defendant"), was arrested and charged with Penal Law ("P.L.") § 220.03, as well as Vehicle and Traffic Law ("V.T.L.") § 1192[3] and related charges. The Defendant was arraigned the next day and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution has not exercised due diligence to disclose all discoverable materials in its possession prior to filing the certificate of compliance. Therefore, Defendant's motion is GRANTED.
 RELEVANT PROCEDURAL BACKGROUND
On October 1, 2024, the Defendant was arraigned on charges of P.L. § 220.03, criminal possession of a controlled substance; V.T.L. § 1192[3], driving while intoxicated; and V.T.L. § 1192[1], driving while ability impaired by alcohol. Defendant was released on his own recognizance, and the case was adjourned to November 6, 2024, for conversion and discovery compliance.
On November 6, 2024, the prosecution did not serve the necessary supporting depositions [*2]and was not discovery compliant. The case was adjourned to January 3, 2025, for conversion and discovery compliance.
On December 21, 2024, the prosecution served, off-calendar, two supporting depositions, a certificate of compliance ("COC"), and statement of readiness ("SOR"). When the parties next appeared in person, on January 3, 2025, Defendant was arraigned on the information. The prosecution stated ready for trial, and the case was adjourned for a discovery conference on February 3, 2025.
On January 17, 2025, defense counsel e-mailed the assigned prosecutor with a list of outstanding items. On January 24, 2025, the assigned prosecutor e-mailed an initial response to defense counsel's concerns. The prosecution shared additional discovery on January 28, 2025; February 5, 2025; and February 11, 2025. No supplemental certificate of compliance ("SCOC") was filed.
At the discovery conference on February 13, 2025, defense counsel objected to the validity of the COC, and a motion schedule was set.
On March 20, 2025, Defendant moved to strike the COC and demanded dismissal of the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c] and 30.30[1][b], as the prosecution was not ready for trial within ninety days. The People filed their opposition on April 24, 2025; the defense reply followed on May 14, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (see C.P.L. § 30.30[1][b], P.L. § 220.03, and V.T.L. § 1193[1][b][i]).
The first speedy trial day charged to the People is the day following the defendant's arraignment (People v Stiles, 70 NY2d 765 [1987]. The speedy trial clock stops when the People file and serve a valid certificate of compliance and statement of readiness, affirming that they have complied with their discovery obligations and are ready for trial (C.P.L. §§ 30.30[5], 245.50[1] and 245.50[3]).
Discovery practice is governed by C.P.L. Article 245, which requires the prosecution to disclose to the defense "all items and information which relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L. §§ 245.20[1]). Article 245 enumerates a list of twenty-one categories of material that must be automatically disclosed to the defense—without the need for request by defense counsel—noting that discoverable material is "not limited" to these categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). The prosecution must provide all discoverable material to the defense except that which has been lost or destroyed (C.P.L. § 245.80) or is the subject of a protective order (C.P.L. [*3]§ 245.70[1]).
After the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly declare their readiness for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. § 245.50[3]).
The Defendant is required to notify the prosecution regarding "any potential defect or deficiency" with the certificate of compliance—such as missing or incomplete items of discovery—"as soon as practicable" (C.P.L. § 245.50[4][b]).
When the defense disputes the validity of a certificate of compliance, the burden is on the prosecution to show "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC" (People v Bay, 41 NY3d 200, 213 [2023]). In People v. Bay, the Court of Appeals articulated a non-exhaustive list of factors to consider when evaluating due diligence, including the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (Id. at 212).

DISCUSSION
I. The Parties' Arguments
A. The Missing Items
The defense moves to invalidate the COC based on three items that were not disclosed prior to the filing of the COC: 1) the name and work affiliation of the first NYPD agent at the scene, later revealed to be traffic enforcement agent ("T.E.A.") Tillmon (C.P.L. § 245.20[1][d]); 2) photographs taken of evidence at the scene by a responding officer (C.P.L. § 245.20[1][h]); and 3) the Z-Finest NYS DMV Report, a police report routinely generated in arrests involving a motor vehicle (C.P.L. § 245.20[1][e]).
B. The Defendant's Argument
The defense argues that the prosecution's certificate of compliance, dated December 21, 2024, is invalid, as the prosecution did not exercise due diligence to turn over all discoverable material prior to the filing of the COC. As the COC is invalid, Defendant contends, the accompanying statement of readiness was illusory, and failed to toll the speedy trial clock.
With regard to the identity of the first NYPD agent at the scene (T.E.A. Tillmon), the [*4]Defendant contends that, while this information was first requested from the assigned prosecutor on January 17, 2025, it was not disclosed until February 11, 2025. Defendant further contends that T.E.A. Tillmon appeared to be the first NYPD agent at the scene and could be seen on body worn camera footage interacting with responding officers, as well as with the Defendant. The defense emphasizes that T.E.A. Tillmon was plainly visible "within the first thirty seconds" of another officer's camera footage, and that the People's failure to disclose his name and work affiliation demonstrates their lack of due diligence (Defense Motion at 4-5, citing People v. Trotman, 77 Misc 3d120(A) [Crim Ct, Queens County 2022] ["Where defense counsel examines the prosecution's discovery materials and points to clear references that other undisclosed discoverable items exist, the court cannot find that the prosecution acted reasonably or diligently"]).
With regard to the photographs, Defendant contends that the photographs were belatedly disclosed, as they were not turned over until January 28, 2025, following a request by defense counsel. Defendant further notes that the existence of the photos would have been obvious to a diligent prosecutor, as body camera footage depicts an officer at the scene taking photographs after audibly stating that he would take photographs (Defense Motion at 8). While Defendant acknowledges having received thumbnails of the photographs prior to the filing of the COC, the defense emphasizes that the thumbnails "are in grayscale and have such a low resolution that they are not reasonable substitutes for the actual photographs" (Defense Reply at 6).
With regard to the Z-Finest report, Defendant notes that, to date, the prosecution has not shared the Z-Finest report generated at the time of the initial investigation, but only a subsequently generated such report, dated February 3, 2025. The defense believes that an earlier Z-Finest report was generated at the time of the arrest, as the box for "Z-Finest DMV NYS Driver Check" is checked off on the NYPD Arrest Checklist (Defense Motion Exhibit B), a document on which the arresting officer notates which documents were included in the arrest packet (People v. Cabezas, 197 N.Y.S.3d 922 [Crim Ct, Kings County 2023]. The defense further contends that the prosecution's "boilerplate request" for documents from the NYPD's database is not enough to discharge their discovery obligations, as the assigned prosecutor should have inquired about this specific document prior to filing the COC, since the document is referenced in other discovery (Defense Reply at 7).
Ultimately, Defendant argues, the belated disclosure of the above items is prima facie evidence of the People's lack of due diligence.
C. The People's Argument
The People contend that the COC is valid, making arguments specific to each item flagged by Defendant.
With regard to the name and work affiliation for the NYPD agent, the People argue that this information is not automatically discoverable. The People emphasize that T.E.A. Tillmon is a traffic enforcement agent and not a law enforcement officer, and contend that he "does not [*5]have information that rises to the level of any discovery obligation under § 245.20[1][d] because he did not have body-worn camera, did not issue any summons, did not generate any paperwork, and did not interact with the defendant for a substantially longer period of time than [the arresting officer]" (People's Opposition at 8). The assigned prosecutor acknowledges that T.E.A. Tillmon "is the first on the scene," but maintains that the agent's "role and memory of the event is minimal, and this was confirmed when the undersigned spoke with him on or about January 30 — February 5, 2025" (Id.).
Regarding the belatedly disclosed photographs, the prosecution maintains both that they acted diligently, having made general discovery requests of the NYPD, and that the Defendant was effectively already in possession of the photographs. The prosecution points to thumbnails of the photographs attached to the arresting officer's report, shared prior to the filing of the COC, and add that the content of the photographs was "also visible on body-worn camera" (People's Opposition at 9-10). Finally, the prosecution contends that the photographs were shared with Defendant expeditiously following Defendant's request (People's Opposition 9-10).
Regarding the Z-Finest report, the People affirm that they do not have definitive information about whether this report was generated at the time of arrest. The prosecution explains that "it is the People's position that [it's] possible that this document was in fact not actually generated during the time of the arrest despite it being checked off in the arrest checklist" (People's Opposition at 10). In a phone conversation with the assigned prosecutor, the arresting officer "confirmed that his paperwork from the date of arrest did not include the Z-Finest Driver Report, and he could not explain why it was checked off on the arrest report" (Id. at 11).
II. The Court's Analysis
A. The Traffic Enforcement Agent's Identifying Information
The plain language of C.P.L. §245.20[1][d] is clear. The People must disclose "the name and work affiliation" of all "law enforcement personnel" with "evidence or information relevant to the offense charged." C.P.L. § 245.20[1][d] does not direct the People to disclose this identifying information for all "law enforcement officers"; it directs the People to disclose this information for all "law enforcement personnel."
Traffic enforcement agents fall squarely into the category of law enforcement personnel, as they are employed by the NYPD and fulfill public safety functions. Traffic enforcement agents patrol areas to enforce traffic laws, issue summonses, and wear uniforms bearing the NYPD logo (see https://nypdrecruit.com/pages/traffic-enforcement-agent, last visited June 10, 2025).[FN1]
As a member of law enforcement personnel involved at the scene of the alleged offense, T.E.A. Tillmon's name and work affiliation were automatically discoverable under C.P.L. § [*6]245.20[1][d].[FN2]

Furthermore, while the prosecution maintains that T.E.A. Tillmon's role in the criminal matter does not "rise[] to the level of any discovery obligation under § 245.20[1][d]," there is no minimum role or level of engagement which triggers disclosure under C.P.L. § 245.20[1][d]. Defendant is plainly entitled to the know the identity of this witness, whether the prosecution believes the witness's knowledge of the matter to be substantial or not. (See People v. Paulino, 83 Misc 3d 1222(A) [Crim Ct, Bronx County 2024] ["The People. . . cannot unilaterally decide the importance or relevancy of a document or item. Instead, defendant should be provided all material in the People's control to be able to determine its relevance to a particular defense, and prepare arguments as to its use on cross-examination at hearing and trial" (internal citations omitted)].)
Finally, whether or not T.E.A. Tillmon ultimately recalled the events is immaterial.[FN3]
T.E.A. Tillmon qualifies as "law enforcement personnel" under the statute. Body-worn camera footage shows him to be the first NYPD agent at the scene, interacting both with the Defendant and with other officers. As a member of "law enforcement personnel" with "evidence or information relevant to the offense charged," T.E.A. Tillman's name and work affiliation were subject to automatic discovery (C.P.L. § 245.20[1][d].
B. The Photographs
Photographs taken by a law enforcement agent are automatically discoverable under C.P.L. § 245.20[1][h], which requires disclosure of "[a]ll photographs and drawings made or completed by a public servant engaged in law enforcement activity," if the photographs relate to the subject matter of the case and are in the People's possession (C.P.L. § 245.20[1]). The photographs in question clearly meet these criteria: they were taken by an officer at the scene engaged in the investigation of the instant matter, and, as they are possessed by the NYPD, they are in the prosecution's constructive possession (Defense Motion at 8; C.P.L. § 245.20[2]).
The Court disagrees with the People's contention that the photographs were effectively provided to defense counsel via thumbnails and the officer's body worn camera footage (People's Opposition at 9). The thumbnail images are in grayscale and appear to be low-resolution (Defense Motion Exhibit D). The thumbnails are of such poor quality that, as Defendant correctly observes, they are insufficient for use at trial. C.P.L. § 245.20[1][h] requires the disclosure of "all" photographs, and this necessarily includes the actual, full-resolution versions. That some of the photographs' subject matter also appears on body worn camera footage does not absolve the people of their obligation to disclose the photographs themselves.
C. The Z-Finest Report
The Z-Finest report is a document routinely generated during arrests for DWI offenses (See Defense Motion Exhibit B). The People disclosed the NYPD Arrest Checklist, with a box checked next to "Z-Finest DMV NYS Driver Check," strongly suggesting the existence of such a document at the time of arrest. The People's argument that no such document was generated at the time of arrest is speculative, and their failure to inquire further or confirm its existence prior to filing the COC is not consistent with the exercise of due diligence. The subsequent generation of a Z-Finest report on February 3, 2025—after the filing of the COC—does not cure this defect.
D. Due Diligence and the Bay Factors
When the Defendant challenges the validity of the People's certificate of compliance, the People bear the burden to establish that they "exercise[d] due diligence and made reasonable inquiries prior to filing the initial COC despite a missing or belated disclosure" (People v Bay, 41 NY3d 200, 213 [2023]). A court considering the People's diligence should consider, among other factors, the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (Id. at 212).[FN4]

The People do not detail any specific efforts to disclose T.E.A. Tillmon's name and work affiliation prior to the COC's filing, instead relying on the argument that this information was not automatically discoverable—an argument this Court rejects. Regarding the photographs and the Z-Finest report, the prosecution affirms that they requested discoverable material "from the NYPD" on October 1, 2024, and on October 24, 2024, and met with the arresting officer on October 17, 2024, "to discuss, inter alia, discovery on the case" (People's Opposition at 7). However, the prosecution does not detail any targeted attempts to obtain the photographs or inquire about the Z-Finest Report prior to the filing of the COC. General discovery requests do not relieve the People of their duty to review their own materials and ascertain if discoverable [*7]items are missing (People v. Martinez, 229 N.Y.S.3d 329, 336 [Sup Ct, Kings County 2025] ["In this case, the People argue that they requested all notes/paperwork from the arresting officer. . . Without more, the mere statement that requests were made is insufficient to establish due diligence. Had the People reviewed the evidence in this case, it would have been abundantly clear that files were missing" (internal citations omitted)]).
The People must exercise due diligence and make reasonable inquiries to disclose all discoverable material in their possession prior to filing a COC (People v Bay, 41 NY3d 200 [2023]). The record here shows that the People failed to meet this standard. Key items remained outstanding when the COC was filed. As these items were referenced in other disclosed materials, their existence should have been obvious to a prosecutor exercising due diligence. None of the People's arguments regarding the belatedly disclosed items offer a reasonable explanation for the discovery lapse. Finally, after disclosing the belated items, the People have yet to file a supplemental certificate of compliance detailing "the basis for the delayed disclosure," as required by C.P.L. § 245.50[1-a]. Accordingly, the Court finds that the certificate of compliance filed on December 21, 2024, was invalid, and its accompanying statement of readiness failed to toll the speedy trial clock.

THE CPL § 30.30 CALCULATION

The first day counted for speedy-trial purposes is October 2, 2024, the day following Defendant's arraignment. The case was adjourned to November 6, 2024, for conversion and discovery compliance (October 2, 2024 — November 6, 2024 = 36 days charged). On November 6, 2024, the case was adjourned, again for conversion and discovery compliance, to January 3, 2025. The prosecution filed and served a COC and SOR off-calendar on December 21, 2024; however, as discussed above, the COC was invalid and failed to toll the speedy trial clock (November 7, 2024 — January 3, 2025 = 58 days charged). On January 3, 2025, the case was adjourned for discovery conference to February 13, 2025. The prosecution shared additional discovery multiple times throughout this adjournment period, but did not file a supplemental certificate of compliance. As the original COC was invalid, the speedy trial clock continued to run (January 4, 2025 — February 13, 2025 = 41 days charged). The speedy trial clock was tolled on February 13, 2025, when the instant motion schedule was set. Accordingly, 135 days are chargeable to the People, and their ninety-day speedy trial period has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 170.30[1][e], and 30.30 is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: June 11, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:T.E.A. Tillmon is seen on body camera footage wearing a uniform with an NYPD patch on the sleeve (Defense Motion Exhibit A).

Footnote 2:Even assuming, arguendo, that traffic enforcement agents were not "law enforcement personnel," T.E.A. Tillmon's identifying information would still be automatically discoverable under C.P.L. § 245.20[1][c], which requires the prosecution to disclose "[t]he names and adequate contact information for all person other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto."

Footnote 3:There is, simply put, no statutory basis from which to infer a relationship between the discoverability of items related to a witness and the quality of the witness's memory. Furthermore, as Defendant points out, T.E.A. Tillmon may have better recollected the incident had the People contacted him—or supplied his name and work affiliation to defense counsel so she could contact him—within the statutorily prescribed thirty-five day period (Defense reply, fn 2, citing C.P.L. § 245.10).

Footnote 4:In the instant matter, neither party discusses the complexity of the case. Nor does either party address the volume of discovery provided. The Court therefore relies on the remaining Bay factors to analyze the People's diligence in discharging their discovery obligations.